UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN DAVID SPENCER,

    Defendant.
_____/

Case No. 09-cr-20114

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR BILL OF PARTICULARS** (docket no 14), **DENYING DEFENDANT'S
MOTION TO SUPPRESS DEFENDANT'S STATEMENTS** (docket no. 15)**, AND
HOLDING FOR TRIAL DEFENDANT'S MOTION IN LIMINE** (docket no. 16)

**INTRODUCTION**

Defendant John David Spencer has been indicted for receipt and distribution of child pornography, and possession of child pornography. Spencer filed three pretrial motions, and did not seek concurrence in the motions before filing them. Spencer requests the government to provide him with a bill of particulars. Second, he requests suppression of his statements given FBI agents when his home was searched. Third, he requests that certain prior bad acts be excluded prior to trial.

As an initial matter, the government has agreed to provide Spencer, to the best of its ability, with the information he requests. Counsel for Spencer agreed at the motion hearing held in this matter to withdraw the motion, but has yet to do so. To the extent Spencer requests the government provide him with information the government has agreed to voluntarily provide, the Court finds the motion moot and denies it.

**FACTUAL BACKGROUND**

*1. Preliminary Investigation*

The following account of the preliminary investigation prior to the issuance of the search warrant is taken from the government's briefs. The facts regarding the investigation leading up to issuance of the search warrant for Spencer's home are provided here only to give context to the Court's decision on Spencer's suppression motion and to give context to the testimony given at the evidentiary hearing on November 10, 2009, which testimony relates to the execution of the search warrant. The Court takes no position regarding the truthfulness of the factual account, and leaves for trial the government's establishment of the following facts.

Thus, according to the government, on or about May 27, 2008, an FBI Special Agent located in New York signed onto the Internet through the internet service provider America Online. The agent entered a chat room entitled "Open Minded Parents." Once in the chat room, the agent typed the message "anyone trading." This phrase is apparently used on-line when referring to whether or not other individuals in the chat room want to trade images of child pornography. Three individuals responded to the agent. One of the individuals who contacted the agent was Spencer, who was communicating under the username "Misngmn."

Spencer immediately wrote "hi, have some, s2r."[1] The agent responded "you first." Spencer told the agent "sorry, need to make sure about you [sic], but am [sic] good here for it." The agent then deliberately sent a file to Defendant which the agent knew Defendant could not open. While the agent pretended to repair the problem with the file he sent, he

---

[1] "s2r" is online jargon for "send to receive" and tells a person to first send a picture in order to receive a picture.

told Spencer "ok, send something in meantime [sic] and ill [sic] see i [sic] can open." While the agent was "fixing" the problem, Spencer and the agent began to talk about how the agent visited Vietnam, Thailand, and Japan. Spencer told the agent "i [sic] heard all three are pretty liberal about this, nice! I would like to go there sometime." Later in the conversation, Spencer asked the agent "wow, nice, so did you have a chance to do some stuff?" After the agent told Spencer that he had some fun, Spencer asked the agent how old the boys he "could play with" were and if he could "play in all three countries?"

After the agent answered Spencer's questions, Spencer asked if, in Vietnam, "would the boys just suck you? or [sic] just jack you off? [sic] or could you suck them? [sic] were they old enough to get hard? cum?" The agent responded "yes to all" and Spencer replied "mmmmm that's hot." As the conversation continued, Spencer told the agent that he was 53 years-old and was getting "pretty hard right now, and wouldn't mind just kind of listening, of course, if you don't mind." The agent indicated he did not mind if Spencer would "give [him] something to look at for [his] enjoyment." Spencer subsequently sent two images of child sexually abusive material to the agent.

After sending the child pornography, Spencer asked the agent to talk about his experience in Vietnam "step by step." The agent conveyed a fictional non-graphic story about an experience with two eleven year-old boys while in Vietnam. After he was done, the agent asked Spencer if he had any stories. Spencer responded "yes, about [his] girlfriend's] daughter." Spencer told the agent that after the girl just turned twelve years-old, she sat in his lap and put her head in his lap to watch TV. He described how "he got hard, at first she didn't do anything, but the last few times, she would accidently put her hand on it" and "it would get [him] so hard." Spencer also told the agent that "one time, i [sic] upstairs

3

and she got out of shower [sic], and i saw her nude." Spencer explained that "she did it on purpose, i [sic] was in another [sic] room, but she had little bumps, and i [sic] could see her pussy." At that point, the agent indicated he had to step away for a few minutes. Spencer told the agent he had to leave also, and the on-line chat was terminated.

The agent subpoenaed America Online and determined that the username "Misngmn" was registered to Spencer and that Spencer was communicating with the agent from a computer located in his home. The evidence obtained from the chat was apparently used to obtain a search warrant for Spencer's residence.

*2. Execution of the Search Warrant*

On November 10, 2009, the Court held an evidentiary hearing for the limited purpose of determining whether Spencer was "in custody" for purposes of applying *Miranda* and ruling on the defendant's motion to suppress.[2] Three witnesses testified at the hearing: Spencer, plus FBI Special Agents Brett Leatherman and Paul Brasmer. The testimony of the three witnesses is largely consistent.

Agent Leatherman testified first, followed by agent Brasmer, whose testimony was consistent with that of agent Leatherman. Agent Leatherman testified that on October 8, 2008 at 7:30 in the morning, he and approximately seven other FBI agents executed a search warrant for Spencer's residence. At some point during the execution, some of the agents drew their guns and pointed them at one of Spencer's sons. Apparently, the son was awoken by the agents, got out of bed, and began to walk behind a door in defiance of the agents' commands to come out of the bedroom. Once the son understood what was

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

happening, he complied with the agents' commands that he come out of the room. Spencer did not witness this event. As correctly alleged in Spencer's motion, at some point, outside the presence of Spencer, Spencer's son asked one of the agents if his father needed an attorney. Spencer himself never requested an attorney.

Agent Leatherman asked Mr. Spencer if he wanted to talk about the investigation and the allegations in the search warrant. Spencer said that he did. Spencer does not dispute that he offered to talk about the investigation. Because of the sensitivity of the investigation, i.e., child pornography possession, agent Leatherman presented Spencer with the option of talking elsewhere, out of earshot of his sons. Agent Leatherman suggested speaking in the FBI vehicle rather than at the dining room table where Spencer's children could hear the discussion. Agent Leatherman did not present the option of talking at the dining room table while sending the children back to the room because at the time, FBI agents were executing the search warrant and because there were weapons in the bedrooms.

Spencer chose to speak to agent Leatherman in the unmarked FBI vehicle, a nondescript blue Ford Taurus parked outside of Spencer's home. Agents Leatherman and Brasmer walked with Spencer out of the house to the vehicle. Brasmer was present at the discussion as a witness and Leatherman took the lead because it was his investigation. The three men entered the vehicle with Spencer and Leatherman in the back seat and Brasmer in the front seat. The back doors were not locked and could be opened from the inside. There were no weapons in sight in the vehicle. The vehicle was parked in the apartment complex parking lot outside Spencer's apartment door where passers-by could have clearly seen the men inside having a conversation. Surrounding neighbors could have also seen the car from inside their apartments.

5

Agent Leatherman testified that the first thing he said to Spencer when they got into the vehicle was that Spencer was not under arrest and would not be placed under arrest that day. Agent Brasmer also told Spencer he was not under arrest, that it was a voluntary interview, and that Spencer could stop at any time or refuse to answer any questions. The questions agent Leatherman asked were limited to the investigation of child pornography possession, though Spencer volunteered information that allegedly exceeded the scope of the investigation. At no point during the discussion with Agent Leatherman did Spencer indicate that he no longer wanted to talk, or that he wanted to speak with an attorney. During the conversation, Spencer gave Agent Leatherman consent orally, and in writing, to assume Spencer's identity in order to search Spencer's America Online email account.

The conversation lasted for approximately 30 to 45 minutes, after which time Spencer was not arrested. Spencer and the agents got out of the car by opening their doors from the inside; no one opened the car door for Spencer from the outside.

Spencer also testified at the hearing. He testified that on October 8, 2009, at 7:30 in the morning there was a pounding on his front door. He was advised by agent Leatherman that the FBI had a search warrant for the apartment and was told to sit down. He testified he was scared during the execution of the search warrant. Spencer told Agent Leatherman that he wanted to talk about the search warrant, at which point agent Leatherman said they could speak inside the apartment in front of his sons, or they could speak in the FBI car. Spencer chose to go to the vehicle.

In addition to the foregoing, Spencer testified at the hearing that when inside the vehicle, agent Leatherman asked Spencer about what Spencer had apparently done with his girlfriend's daughter. Spencer was shocked that the agents would be asking him about

6

his girlfriend's daughter and child molestation. Spencer felt that , rather than explaining the search warrant process to him, agent Leatherman was conducting an interview or interrogation of him. Spencer did not feel that he was free to open the car door and walk away. Spencer admitted that he gave consent to allow the FBI to use his America Online account.

## DISCUSSION

I.  Motion to Suppress Spencer's Statements

Spencer argues that the FBI interrogated him while he was in custody before being given his *Miranda* warning[3] so his statements should be suppressed. The government disagrees that Spencer was in custody when he was questioned, and argues that the *Miranda* warnings were never required.

The Fifth Amendment to the U.S. Constitution says that an individual may not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To the ends of protecting this right, *Miranda* requires police officers to give warnings, including the right to remain silent, before engaging in "custodial interrogation." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). For police to violate the *Miranda* requirements, the defendant must establish he was "in custody," and so while, was "interrogated." The defendant bears the burden of demonstrating by a preponderance of the evidence that the interview was a custodial interrogation. *United States v. Smith*, 783 F.2d 648, 650 (6th Cir.1986).

It is fairly clear that Spencer was "interrogated" as that term is understood in the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

7

*Miranda* jurisprudence. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (defining "interrogation" to include express questioning, as was the situation in the instant case). The inquiry here thus reduces to whether Spencer was "in custody" when questioned.

Courts consider the totality of the circumstances to determine whether a defendant was in custody when questioned by law enforcement. *Panak*, 552 F.3d at 465. The ultimate inquiry is whether "a formal arrest" occurred or whether there was a "restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). To answer this question, courts focus on the objective circumstances of the interrogation to determine how a "reasonable person" in the position of the individual being questioned would gauge the breadth of his freedom of action. *Id.* The subjective state of mind of the defendant is not relevant. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("[T]he only relevant inquiry is how a reasonable person in the suspect's position would have understood his situation."). Several factors guide the inquiry, including whether a reasonable person in the defendant's position would have felt free to terminate the questioning and walk away, the purpose of the questioning, whether the place of the questioning was hostile or coercive, the length of the questioning, whether the suspect was informed that the questioning was voluntary or that he was free to leave, whether the suspect initiated contact with the police or acquiesced to their requests to answer some questions, and whether the individual was told she need not answer the questions. *Panak*, 552 U.S. at 465; *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). These factors are guides to the Court's analysis and the satisfaction of one is not dispositive of the inquiry.

Considering the totality of the circumstances, the Court finds that Spencer was not

in custody when questioned by the police. Importantly, agent Leatherman asked Spencer, while executing the search warrant, if Spencer wanted to talk about the investigation and the allegations in the search warrant. Spencer voluntarily agreed to speak with the agents. The fact that the agents asked Spencer if he wanted to talk would, in the Court's view, relay to a reasonable person that he had a choice to discuss the investigation with the agents and that he could simply have declined to do so. If a reasonable person makes a meaningful choice to speak, he or she most likely also realizes that the choice could be withdrawn at any time. The ability to later withdraw demonstrates that the reasonable person feels as if they have control over the situation such that their freedom of movement is not restrained. There is no indication in the record that agent Leatherman asked Spencer to talk as a mere formality – Spencer had a meaningful choice to speak with the agents and agreed to do so. The fact that Spencer had a choice in discussing the investigation, and chose to discuss it is highly relevant, and points toward Spencer not being in custody.

Another relevant indication that Spencer was not in custody is the location of the discussion between agents and Spencer. Although the back of a police cruiser would generally be considered an inherently hostile or coercive environment for questioning, such is not the case here. It was Spencer himself who opted to speak with agents in the back of the car, that was unmarked, and which indicates he felt comfortable with the location. When given the choice of discussing the investigation inside Spencer's residence in the presence of his children, or in the back of an FBI vehicle, parked in the open and outside the presence of his children, Spencer chose the latter. The choice was a meaningful one.

In *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998), the Sixth Circuit found that an agent's exercise of discretion to discuss a child pornography investigation in private,

even in an agent's car, does not indicate *per se* that a suspect is in custody. The court found that it appeared that the agent chose his car because of the sensitivity of the subject matter of the interview and the fact that he was showing the defendant pornographic pictures from the defendant's computers. *Id.* It noted that "[i]n this sense, it seems the Agent chose the car out of solicitude for [the defendant] and to save him from a more public exposure of his criminal activity, not out of a desire to coerce or intimidate him." *Id.* Similarly, in this case, it appears the agent recommended, and Spencer agreed, to discuss the matter in the agent's car outside the presence of Spencer's children. It was chosen not to intimidate or coerce Spencer, but out of consideration for him. There is no indication that Spencer felt intimidated when discussing the events in FBI vehicle.

The Court does not conclude that agent Leatherman was attempting to exert control over Spender to intimidate him by not providing him with any additional options of places in which to speak. Assuming Spencer was only given two options of places to talk (his front room or the back of the FBI car), as he claims, agent Leatherman's failure to give a third option was likely done for a legitimate reason. Because of the nature of the allegations in the search warrant, i.e., child pornography, agent Leatherman wanted to discuss the investigation in private and could think of no other place that would afford the privacy other than the police car which was an enclosed space. As Leatherman testified, he was open to suggestions if there were other options. Spencer, who was more familiar with the immediate surroundings, it being his apartment, was the only person who could have offered other suggestions for places to talk, but he offered none.

Finally, and most compellingly, Spencer was expressly told that he was not under arrest and that he was not going to be arrested when the discussion ended. The Sixth

10

Circuit has recognized that a statement by a police officer that a defendant is not under arrest and would not be arrested at the conclusion of the interview is an important factor in finding that the suspect was not in custody.  See *Salvo*, 133 F.3d at 951; *Swanson*, 341 F.3d at 530.  In *Salvo*, this factor was expressly part of the court's finding that no reasonable person could view the defendant's situation as "custodial or equivalent to a formal arrest." 133 F.3d at 951.

Given consideration of the totality of circumstances, the Court concludes that Spencer was not in custody when questioned by agent Leatherman.  Spencer was not formally arrested before, during, or after the interrogation, and there was never a "restraint on freedom of movement of the degree associated with a formal arrest."  Therefore, Spencer was not entitled to *Miranda* warnings prior to questioning, and the agents' failure to provide them does not warrant suppression of Spencer's statements.

Spencer argues that a second reason to suppress his statements exists because the questioning continued even after he invoked his right to remain silent or right to seek counsel. Spencer's argument is misplaced for a number of reasons.

One of the procedural safeguards required by *Miranda* is that a suspect subject to custodial interrogation has the right to speak with an attorney prior to questioning, and to have an attorney present during questioning.  Law enforcement must advise the suspect of this right before questioning begins.  *Davis v. United States*, 512 U.S. 452, 457 (1994).  If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him.  *Id.* at 458  But if a suspect requests counsel at any time during the interview, all questioning must cease until an attorney has been made available or the suspect himself reinitiates conversation.   *Id.*   The suspect must

unambiguously request counsel to invoke the right. *Id.* at 459. This means that the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* If the request does not meet this level of clarity, the police may continue to question the suspect.

Spencer argues here that his statements should be suppressed since they were made in response to questions asked after he invoked his right to counsel. This argument fails for three reasons. First, assuming Spencer himself requested an attorney, his right to counsel under *Miranda* did not attach because he was not subject to custodial interrogation as discussed above. *See id.* (citing *Miranda*, 384 U.S. at 436) ("*a suspect subject to custodial interrogation* has the right to consult with an attorney and to have counsel present during questioning ...") (emphasis supplied). Second, Spencer never personally invoked his right to counsel. Instead, it was his son who apparently asked the FBI agents if Spencer should have counsel present. The right to assistance of counsel at a custodial interrogation is a personal right that can be invoked only by a suspect himself. *See Moran v. Burbine*, 475 U.S. 412, 422 (1986) ("Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right."). Third, even if the son's statements can somehow be considered as Spencer's own, the statements were legally insufficient to invoke the right to counsel. The invocation of the right must be clear and unambiguous, such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. Questions about the necessity of counsel are not clear and unambiguous requests for counsel. *Davis*, 512 U.S. at 462 (finding that suspect's

statement, "Maybe I should talk to a lawyer," was equivocal and police were allowed to continue questioning the suspect). Here, the son's question was not a clear and unequivocal request for counsel such that questioning of Spencer was required to cease.

II. Motion in Limine to Exclude Prior Bad Acts

Spencer also moves *in limine* to exclude evidence of prior bad acts. Specifically, he requests that the government be prohibited from introducing a portion of a "chat" allegedly between himself and an undercover agent whereby Spencer discussed sexual experiences he stated he had with his girlfriend's twelve year-old daughter. He also requests that numerous images of "child erotica" which is not illegal, be excluded from trial. Spencer alleges that admission of the chats and the child erotica would be unfairly prejudicial and only slightly probative, requiring exclusion under Fed. R. Evid. 403. He argues that given the nature of the charged offenses, a jury would be unable to consider the evidence without concluding that Spencer has a propensity for committing sexual acts against minor females, which is an improper inference for the jury to draw from the evidence. Additionally, he argues, it would require the defense to call many witnesses to testify that the acts allegedly recounted by Spencer in the chats in fact never occurred.

The government responds with two arguments. It first asserts that the *entire* chat with the undercover agent should be admissible under an exception to the general prohibition of 404(b), which extends to *res gestae* or "background" evidence. It also argues that the evidence is relevant for the permissible purposes of demonstrating intent, knowledge, and identity and that the probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403.

As it noted at the evidentiary hearing, the Court finds it more prudent to hold in

abeyance ruling on Spencer's motion *in limine* until the final pretrial conference when the Court can determine more fully the government's purpose and need for offering the child erotica and allegedly prejudicial portion of the transcript, as well as weigh the probative value against the prejudicial effect of admitting the evidence.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that:

- Spencer's motion for bill of particulars (docket no. 14) is **DENIED as moot;**

- Spencer's motion to suppress his statements made on October 8, 2008 (docket no. 15) is **DENIED**; and

- Spencer's motion *in limine* to exclude other acts (docket no. 16) is **held in abeyance** until the final pretrial conference.

**SO ORDERED.**


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  November 18, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 18, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager